## Richmond

### John C. Huddle v. Mary Juanita Huddle.

November 29, 1965.

Record No. 6057.

Present, All the Justices.

*Norvell A. Lapsley (W. W. Wharton; Lapsley & Depoy; Wharton, Aldhizer & Weaver*, on brief), for the appellant.

*V. Stephen Bradshaw (Clark, Wilson & Bradshaw*, on brief), for the appellee.

Eggleston, C. J., delivered the opinion of the court.

John C. Huddle filed a bill in the court below, which was later amended, praying for a divorce from his wife, Mary Juanita Huddle, on the ground that she had been guilty of adultery with G. L. Huffman. The wife filed an answer and grounds of defense, admitting the charge of adultery but alleging that her husband had "freely condoned it" and that thereafter they had lived together. She also alleged that after such condonation she had been a "faithful wife" to

her husband. In her cross-bill she prayed for a divorce on the ground that her husband had willfully deserted her without just cause on June 26, 1962. She also prayed that she be awarded the custody of their children.

The evidence was taken by depositions. After the evidence on behalf of the husband had been taken the trial court sustained the wife's motion to strike such evidence, on the ground that his own testimony showed that he had condoned and forgiven his wife's misconduct. Accordingly, it decreed that the husband was not entitled to a divorce and that his bill should be dismissed. The cause was retained on the docket for further proceedings on the wife's cross-bill.

After the evidence on behalf of the wife and the rebuttal evidence for the husband had been taken, the court entered a final decree awarding the wife, on her cross-bill, a divorce *a mensa et thoro*, support money, and the custody of the three children. From this decree the husband has appealed. He assigns as error the action of the court in denying him a divorce on his bill and in granting the wife a divorce and custody of the children on her cross-bill. However, in his brief he states that "the real issue before this court is, 'Was condonation proven?' " We find that it was.

The record discloses these facts: The couple was married on December 24, 1947 in Rockingham county, Virginia, when the husband was twenty-three and the wife was nineteen years of age. At the time of the institution of the proceeding, in November, 1962, two children had been born of the union, a girl, then ten, and a boy, six years of age. Pending the proceeding another son was born on February 15, 1963. For a number of years prior to the suit the couple had lived at their home in Rockingham county. For the past several years the husband has been gainfully employed by Merck & Company at its local plant.

About June 3, 1962 the husband became suspicious of his wife's infidelity with G. L. Huffman who operated a service station in the vicinity. There was evidence that for some time prior thereto they had been meeting clandestinely. The husband questioned his wife but she denied any misconduct with Huffman and assured him of her fidelity. He said that at that time he believed her. On June 6 he told his wife that he had learned that she had lied to him about her whereabouts and conduct while he was away from home a short time before. Finally, he said, she "broke down," admitted that Huff-

man had been coming to see her, and that on one occasion had made a "clumsy attempt at intercourse" with her. Her testimony is that at that time she fully confessed to her husband her infidelity. He testified that she then said that she "was going away with Huffman" and would leave the children with him, the husband. On that night he took his wife to her father's home and told her family that they "were separating." He told her father that the separation was because she "was pregnant by another man."

On the next day, June 7, they went together to the office of Julian K. Hickman, an attorney practicing in Harrisonburg. While there Mr. Hickman prepared a separation agreement which was to be later executed by them. However, this document was not signed. On the same day the husband took the children to his mother's home at Elkton. The wife remained at the home where she, her husband and the children had been living.

On June 10, upon the advice of Hickman, the husband and children returned to their home. The couple resumed their marital relations and on June 14 went on a short vacation with their children to Virginia Beach where they remained several days. That trip was not a happy one because the husband continued to be suspicious that his wife was pregnant by another man.

On June 18 and again on June 25 the husband took his wife to two local physicians to ascertain whether she was pregnant. The reports of these physicians were inconclusive. However, on June 26 the husband left home and since that time the parties have not cohabited.

Code (Repl. Vol. 1960), § 20-94, reads thus:

"*Effect of cohabitation after knowledge of adultery; lapse of five years.* When the suit is for divorce for adultery, the divorce shall not be granted, if it appear that *the parties voluntarily cohabited after the knowledge of the fact of adultery*, or that it occurred more than five years before the institution of the suit, or that it was committed by the procurement or connivance of the plaintiff." (Italics supplied.)

The critical issue here is whether "the parties voluntarily cohabited after the knowledge of the fact of adultery" on the part of the wife. If so, under the mandatory terms of the statute a divorce "shall not be granted."

We agree with the trial court that the evidence shows that these parties voluntarily cohabited after the husband had knowledge of his wife's adultery. According to the testimony of the wife, on June

6, 1962 she confessed to her husband her adultery with Huffman. On the same day the husband took her to her parents' home and told her father that because she was pregnant by another man they were separating. On the next day they visited an attorney where a separation agreement was prepared. It thus appears, without contradiction, that the husband then knew of his wife's infidelity. It also appears, without contradiction, that after this "knowledge of the fact of adultery" on the part of the wife, the couple resumed voluntary cohabitation on June 10, and that this continued until June 25, the day before the final separation. Under these circumstances, the trial court was right in holding that the condonation by the husband of his wife's infidelity barred his right to a divorce on the ground of her alleged adultery. Code, § 20-94, *supra*.

This case is quite different from that of *McKee* v. *McKee*, decided at the present session. There we found that condonation did not bar the husband's right to a divorce, because at the time of the resumption of the cohabitation the husband had no knowledge of one or more acts of misconduct on the part of the wife. Moreover, after the husband had forgiven the wife for certain misconduct she resumed her association with her paramour, thus nullifying her husband's forgiveness.

In the present case it thus appears that the husband willfully deserted his wife without just cause on June 26, 1962. Hence, she was entitled to the decree awarding her a divorce *a mensa et thoro*.

Counsel for the wife is allowed a fee of $200 to be paid by the husband for defending this appeal.

For these reasons the decree appealed from is

*Affirmed.*